UNITED STATES of America, Plaintiff,

v.

Burnice J. BUTLER, Defendant.

No. 4:95CR439.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 9, 1996.

Debra Kanevsky Migdal, Office Of The Federal Public Defender, Cleveland, OH, Burnice J. Butler, Campbell, OH, for Burnice J. Butler.

Nancy Lee Kelley, Office Of The U.S. Attorney, Cleveland, OH, for U.S.

## DETENTION ORDER

HEMANN, United States Magistrate Judge.

This matter came before the magistrate judge on the government's motion, pursuant to 18 U.S.C. § 3142(f), for pretrial detention of Burnice J. Butler ("Butler") and on Butler's request for modification of conditions of release.[1] Butler is charged with violating 18 U.S.C. §§ 922(g) and 26 U.S.C. §§ 5841 and 5861(d).

In accordance with 18 U.S.C. § 3142(f) the detention hearing was requested to determine whether any condition or combination of conditions of release would reasonably assure the appearance of Brown at further court proceedings and assure the safety of any other person or the community. The factors to be considered by this court are set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

The court orders detention.

### I.

The following evidence was offered at the detention hearing through the testimony of David DeJoe, special agent for the Department of Alcohol, Tobacco and Firearms. Agent DeJoe testified that he is a member of the Mahoning County Drug Task Force and has been working with state law enforcement officers on investigations of drug trafficking in Mahoning County. One such investigation focused on the activities of Butler. During the week of July 10, 1995 state officers worked with a confidential informant to make controlled buys of crack cocaine from defendant. Lt. Morris of the Task Force subsequently obtained a warrant authorizing the search of 440 Tenney Avenue, Campbell, Ohio, the house where Butler allegedly resided. The warrant indicates that the confidential informant told Lt. Morris that Butler almost always carries a gun with him.

Butler was detained outside of the property as he was returning to it. Officers, including Agent DeJoe, then entered the house where they found, along with various drug paraphernalia, a rifle and a pipe bomb. The pipe bomb contained explosive material as well as pieces of copper which could have the effect of shrapnel upon explosion. Butler acknowledged orally that the rifle belonged

---

1. On January 22, 1996 Magistrate Judge Thomas issued an Order of Conditional Bond setting as a condition of release a $50,000 cash bond. Both parties reserved the right to seek modification of the order.

to him but did not acknowledge possession of the pipe bomb. The pipe bomb was negative for finger prints. Agent DeJoe testified that there appeared to be only one male living in the house. Butler told him that he was planning to move, and there were various items in boxes around the house.

At the time of the search of the house, Butler was on probation and under indictment. The crimes underlying both the probation and the indictment were felonies.

Counsel for Butler argued that Butler was not detained when stopped on the day of the search; the government proceeded by indictment rather than criminal complaint (allowing Butler to stay within the community for approximately six months after the search); and Butler, through his father-in-law, notified pretrial services that he was incarcerated upon receipt of the summons to appear for arraignment, thus indicating his willingness to appear for future proceedings. Butler has not been charged under the Controlled Substances Act despite the presence of drug paraphernalia in his residence and the evidence of his selling crack. Butler also proffered the information in the Pretrial Services Report that he has had a 15 year relationship with a woman in Youngstown and has children and grandchildren in the area. These factors, argue Butler, indicate that he is not a risk of flight.

## II.

■ The court initially addresses the position of the government that under the circumstances of this case, the issue of bond is moot and Butler must be detained. Butler was in state court custody at the time of the issuance of the indictment. He appeared at his arraignment pursuant to issuance of a writ of habeas corpus ad prosequendum. The government argues that the issue of bond is moot because of the constraints posed by 18 Appendix II, Interstate Agreement on Detainers ("Agreement"), § 2 Article IV(e).[2] The court disagrees. First, there is no reference in § 3142 to the Agreement.

If Congress meant to make detention a moot issue when the Agreement is invoked, it could have said so. More relevant here, however, is the fact that defendant appeared in federal court pursuant to an ad prosequendum writ.

In *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Court had before it the question of whether a writ of habeas corpus ad prosequendum may be considered a "detainer" or a "request" within the meaning of the Agreement. In *Mauro* two defendants charged in federal court were removed from state prison pursuant to the issuance of ad prosequendum writs. Subsequently, because of overcrowded conditions, the defendants were returned to state prison prior to resolution of the federal charges. On motion of the defendants the trial court dismissed the indictments, finding that the United States had violated Article IV(e) by returning the individuals to state court without first completing the federal case. The Second Circuit Court of Appeals affirmed the district court, agreeing that the term "detainer" should be construed to include ad prosequendum writs.

The Supreme Court reversed, distinguishing between ad prosequendum writs and detainers. In summary, the Court determined that the Agreement was enacted to address the adverse effect of the lodging of a detainer, i.e. the potentially lengthy duration of a detainer and consequent effect on prisoners and the programs designed for their benefit. Ad prosequendum writs, on the other hand, are issued by the federal court and are executed immediately. There being no inherent delay in the execution of a writ, there is no consequent effect on expeditious disposition of the outstanding charges. The Court held that "a writ of habeas corpus ad prosequendum is not a detainer for purposes of the Agreement." 436 U.S. at 361, 98 S.Ct. at 1848. Thus where, as here, the United States has proceeded by writ and not by detainer, it is not bound by Article IV(e) and this court is not required to consider the

---

**2.** Article IV(e) states: If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter any order dismissal the same with prejudice.

consequences of the Agreement in considering conditions of release.

The government seeks to detain Butler on both risk of flight and danger to the community. Defendant argues that under 18 U.S.C. § 3142(f)(1) and (2) the government cannot proceed here on the theory of danger to the community.

Section 3142(f) sets forth specific situations under which a judicial officer may hold a detention hearing. Subparagraph 1 authorizes a hearing in a case that involves a) a crime of violence, b) an offense with a maximum sentence of life imprisonment or death, c) an offense for which the maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act, etc. or d) any felony if the person has been convicted of two or more offenses described in (a)–(c) or comparable state offenses. Subparagraph 2 authorizes a hearing in a case where there is 1) a serious risk of flight or 2) serious risk, *inter alia*, that the defendant will obstruct justice or a threaten witness.

█ This court agrees with the defendant's argument that § 3142(f) does not authorize a detention hearing in the absence of one of the six situations set forth above. That is to say, a pretrial detention hearing premised only on allegations of danger to the community or another person is not authorized by the statute. The government is required to demonstrate that there are grounds for a hearing under the specific provisions of either § 3142(f)(1) or (f)(2). When there exists one or more grounds for holding a hearing under those provisions, the government may proceed on the theory of risk of flight and/or danger to the community or any other person.

The argument of the government that a detention hearing is authorized upon a showing of danger to the community has its genesis in the theory that one who has previously committed a crime is likely to do so again. "If Congress had intended to authorize pretrial detention in all cases where recidivism appears likely it could easily have done so." *United States v. Himler*, 797 F.2d 156, 160 (3rd Cir.1986). Instead Congress limited the circumstances under which pretrial detention can be ordered. "Therefore it is reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute." *Id.* Accord *United States v. Byrd*, 969 F.2d 106 (5th Cir.1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir.1988).

Once a judicial officer determines that a detention hearing is warranted, the concept of danger to the community resurfaces. Section 3142(g) sets forth the factors to be considered by the court in deciding the propriety of detention. One of those factors is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). While at first blush this appears to create the classic giveth/taketh away situation, such is not the case. The factors set forth in § 3142(g) come into play only after the government has met the initial burden of satisfying the requirements of § 3142(f)(1) or (f)(2). It is certainly reasonable that a judicial officer consider danger to the community in evaluating whether there are appropriate conditions of release.

Against this background, the court now considers the instant case. The government concedes, and the court agrees, that it has not offered persuasive evidence that defendant presents a serious risk of flight. He is a long time resident of Youngstown and has family ties to the area. Except for incidents in 1983 and 1984 he has appeared in state court on numerous charges as required. Through his father-in-law he notified pretrial services of his whereabouts upon notice of receipt of summons in this case. He was not considered a risk of flight last July after the search of his residence; he was released and did not flee.

█ Defendant takes the position that none of the circumstances within § 3142(f)(1) and (f)(2) apply here. Initially this court agreed with that position. Upon further consideration and research of the applicable law, however, the court now determines that the charges against the defendant, felon in possession of a rifle and pipe bomb, are a crime of violence and hence within the provisions of

§ 3142(f)(1). The court finds persuasive the reasoning of *United States v. Washington*, 907 F.Supp. 476 (D.D.C.1995), and the cases cited therein. In *Washington* the court analyzed 18 U.S.C. § 3156(a)(4), which defines "crime of violence." The court determined, first, that a crime is a "crime of violence" "only if the risk of violence is inherent in the nature of the crime, regardless of whether there was a risk of violence or actual violence during the commission of the offense." *Id.* at 485. Inherent in the possession of a firearm by a felon is the threatened use of force against the person or property of another. § 3156(a)(4)(A). As the court stated in *Washington*,

> An individual is presumed to know the law. Thus, when a felon chooses to possess a firearm, it must be presumed he does so in conscious disregard of the law. A felon in possession of a firearm is aware that such activity is illegal, so his act of possessing weapons illustrates a knowing and willful disregard for the prohibition placed upon him.

*Id.* The risk of physical force against the person or property of another is implicit in the knowing, illegal possession of a firearm. *Id.* *See also United States v. Johnson*, 704 F.Supp. 1398 (E.D.Mich.1988).

■ This court holds that felon in possession of a firearm is a crime of violence within § 3142(f)(1) and now considers the specific facts of this case in relation to the factors set forth in § 3142(g). The weight of the evidence against the defendant is substantial. Butler admitted to possession of the rifle. Keys to the property were within his possession; there was evidence that only one person, a male, was living in the house and Butler stated that he was in the process of moving. There was no evidence that the pipe bomb had been in the building for a long period of time and no claim by defendant that he did not have control over it.

Defendant argues that he is a long time resident of Mahoning County with ties to the area. While the defendant claims a long term common law relationship, it appears he was living separately. More important, Butler has an extensive criminal record which includes assaults, possession of firearm while under a disability and drug abuse. The alleged charges occurred while Butler was on probation and under indictment, indicating to this court the defendant's ongoing propensity for committing crimes.

There is danger inherent to the community in the unlawful possession of firearms, both a rifle and a pipe bomb. This is particularly true where the possessor has a lengthy criminal history, has not been deterred from the commission of crime by prior convictions and appears to be involved in ongoing drug offenses.

■ The government's burden of proof·as to danger to the community is clear and convincing evidence. *See United States v. Portes*, 786 F.2d 758 (7th Cir.1985); *United States v. Orta*, 760 F.2d 887 (8th Cir.1985). Based upon the facts set forth above, the court concludes that the government has met its burden and that there are no conditions of release which would assure the safety of the community or any person.

Accordingly, defendant Burnice J. Butler is committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.