UNITED STATES of America, Plaintiff,

v.

Michael Lee CARTER, Defendant.

No. 98–M–524.

United States District Court,
W.D. New York.

Feb. 23, 1998.

William Clauss, Federal Public Defender, Rochester, NY, for defendant.

Richard Resnick, U.S. Attorney, Rochester, NY, for U.S.

DETENTION DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

*PROCEDURAL BACKGROUND*

Michael Lee Carter, by criminal complaint signed by this Court on February 14, 1998,

was charged with violating 18 U.S.C. §§ 922(a)(1)(A), 924(b) and 924(m). That evening, Carter was arrested and on February 16, 1998, he appeared before this Court pursuant to Rule 5 of the Federal Rules of Criminal Procedure. During Carter's initial appearance, the government timely moved for detention pursuant to 18 U.S.C. § 3142(e) and requested a hearing pursuant to 18 U.S.C. § 3142(f)(1)(A) ("crime of violence") and 3142(f)(2)(A) ("serious risk of flight").

After granting the government's request for a short continuance, a detention hearing was held on February 16, 1998. Both the government and the defendant proceeded by proffer. For the reasons that follow, the government's motion for detention is denied.

### DISCUSSION

*Pretrial Detention and the Bail Reform Act of 1984:* "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Thus, "[t]he Bail Reform Act limits the circumstances under which a district court may order pretrial detention." *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988). A judicial officer may hold a detention hearing only if one of six specifically enumerated circumstances exist: (1) the defendant is charged with a "crime of violence", (2) the defendant is charged with an offense for which the punishment is life in prison or death, (3) the defendant is charged with a serious drug offense, (4) the defendant is charged with a felony and has twice been previously convicted of certain serious or violent crimes, (5) there exists a "serious risk" that the defendant will flee or (6) there is a "serious risk" that if released the defendant will obstruct justice or injure, intimidate or harm a witness. 18 U.S.C. § 3142. If one of these six defined circumstances does not exist, the Court is without authority to hold a detention hearing. *United States v. Butler,* 165 F.R.D. 68, 71 (N.D.Ohio 1996).

In this case, the government moved to detain the defendant under the first (crime of violence) and fifth (serious risk of flight) grounds set forth above. Because the analysis for determining whether detention is authorized under the "crime of violence" ground differs from the analysis for determining whether a defendant is a serious "risk of flight", these two circumstances are discussed separately below.

### CRIME OF VIOLENCE

In seeking a detention hearing, the government contends that the firearm offenses with which Carter is charged constitute crimes of violence within the meaning of the § 3142(f)(1)(A) of the Bail Reform Act. To qualify as a "crime of violence", an offense must either be (1) a crime *that has as an element of the offense* the use or attempted use of force against the person or property of another or (2) a felony that, by its very nature, involves a substantial risk that *during the commission of the offense* physical force may be used against the person or property of another. 18 U.S.C. § 3156(a)(4). The government concedes that none of the firearm offenses currently pending against Carter have, as elements of the crime, the use or attempted use of physical force. Thus, the government's entitlement to a detention hearing based upon the defendant being charged with a crime of violence depends on whether the charged firearm offenses meet the second definition of a "crime of violence" in § 3156(a)(4)(B), that is; do the charged offenses, by their very nature, pose a substantial risk of the use of physical force during the commission of the offense?

In determining whether criminal offenses meet the "substantial risk" test, courts have considered two distinct analytical approaches. The first approach, known as the "fact specific" or "case by case" approach allows the court to consider the specific conduct of the defendant in committing the charged offense to determine whether there was a substantial risk of physical harm. The second analytical model, known as the "categorical approach", looks only to the intrinsic nature of the charged offense and not the specific facts and circumstances or the manner in which the defendant allegedly committed the crime.

In this case the government urges the Court to rely on the "fact specific" approach

and consider the specific facts and circumstances which resulted in Carter being charged in the instant federal complaint. According to the government, once the Court considers the circumstances surrounding the charged offenses, the "substantial risk of physical force" required by § 3156(a)(4)(B) will be apparent. The defendant, on the other hand, contends that the Court must look at the charged offenses in a generic fashion and not consider anything other than whether the charged crime, by *its nature,* poses a substantial risk of physical force in the commission of the offense.

Research in this area reveals that the fact specific, "case by case" approach advocated by the government has been specifically rejected by the vast majority of courts construing whether a particular offense qualifies as a "crime of violence".[1] Instead, most courts favor the so-called "categorical approach" to measure whether an offense is a "crime of violence". Under the categorical approach, the charged offense is either a crime of violence for all defendants or for no defendants—an *ad hoc* or case by case analysis by the judicial officer is simply improper. *See United States v. Gloster,* 969 F.Supp. 92, 94 (D.D.C.1997)(In deciding crime of violence issue, Court must "follow categorical approach, that is, the Court shall look only to the statutory definition of the offense itself and not to the specific circumstances under which the alleged offense was committed"); *United States v. Washington,* 907 F.Supp. 476, 484–485 (D.D.C.1995)(Whether or not an offense "is a crime of violence should be determined without consideration of the particular conduct on the part of the defendant"); *United States v. Powell,* 813 F.Supp. 903, 909 (D.Mass.1992)(The "categorical approach is in harmony with the overall legal landscape of detention jurisprudence, which construes the Bail Reform Act narrowly, mindful that its shores abut choppy constitutional waters"); *United States v. Whitford,* 1992 WL 188815 (D.Mass.1992)(adopting the "categorical approach" in determining whether felon in possession charge was a crime of violence); *United States v. Aiken,* 775 F.Supp. 855, 856 (D.Md.1991)("court is constrained by section 3142(f)(1)(A) to examine only the intrinsic nature of the offenses and not the actual conduct of the individual"); *United States v. Johnson,* 704 F.Supp. 1398, 1400 (E.D.Mich.1989)("Each generic offense must be categorized as either a 'crime of violence' or not a crime of violence; there cannot be a justification for *ad hoc* classification of criminal activity").

Based on the foregoing legal authority, this Court finds the "categorical approach" to be the proper analysis to determine whether Carter is charged with a "crime of violence". Because the circumstances in which Carter is alleged to have committed the charged offenses do not determine whether or not the crime is one "of violence", I may not consider his individual conduct in deciding whether he is charged with a "crime of violence". Stated differently, "the question is not what happened in this case but what is the *nature* of the offense charged, as it bears on the risk of use of physical force in the course of the crime." *United States v. Phillips,* 732 F.Supp. 255, 261 (D.Mass.1990)(emphasis supplied).

Having determined the applicable test and the manner in which it must be applied, I turn now to whether 18 U.S.C. § 922(a)(1)(A) or § 924(b) are, as the government contends, crimes of violence under the Bail Reform Act. If the charged offenses do not squarely fit within the statutory definition of a "crime of violence", "then no matter how dangerous or antisocial a defendant may be", the court may not conduct a detention hearing and a defendant must be released on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of any other person in the community. *United States v. Gloster,* 969 F.Supp. 92, 94 (D.D.C. 1997).

---

1. In the only case relied upon by the government, *United States v. Epps,* 1997 WL 765775 (D.D.C.), Judge Robertson found that the categorical approach "does not serve the purposes of the Bail Reform Act and is not required by it." However, Judge Robertson also noted that "all of the [other] judges of this court who have considered the question have agreed that the 'categorical approach' should be employed." *Id.* at *1.

*Section 922(a)(1)(A):* Section 922(a)(1)(A) of Title 18 forbids any unlicensed person to engage in the business of importing, manufacturing or dealing firearms or, in the course of such business, to ship, transport or receive any firearm in interstate commerce. Because, as the government concedes, the actual, threatened or attempted use of force is not an element of. § 922(a)(1)(A), it may qualify as a "crime of violence" only if the offense "by its nature" involves a substantial risk that physical force may be used "in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B).

The government acknowledges that no reported case holds that a violation of § 922(a)(1)(A) qualifies as a crime of violence under the Bail Reform Act. Nonetheless, the government asks the Court to construe 922(a)(1)(A) as a crime of violence by engaging in a fact-specific examination of the allegations against Carter and the aggravating factors involved with the particular guns Carter is alleged to have brought into Rochester.[2] For the reasons set forth earlier in this decision, the Court can not engage in this "fact-specific" approach. A violation of § 922(a)(1)(A) is either a crime of violence for all who stand charged with the offense or for none who are charged with the offense.

Using the "categorical approach" model, the Court must determine whether the *generic* offense of unlicensed dealing or importation of firearms across state lines is a crime which **by its nature** involves a substantial risk that physical force may be used **in the course of committing the offense.** In asking the Court to answer that inquiry in the affirmative, the government points to cases which have held that the offense of a felon in possession of a firearm (18 U.S.C. § 922(g))qualifies as a crime of violence under the Bail Reform Act. *See e.g. United States v. Washington,* 907 F.Supp. at 485 (felon in possession crime is a crime of violence sufficient to justify pretrial detention hearing); *United States v. Sloan,* 820

F.Supp. 1133, 1136 (S.D.Ind.1993)(same); *United States v. Aiken,* 775 F.Supp. at 857 (same); *United States v. Johnson,* 704 F.Supp. at 1399 (same). All of these cases rely on the same basic rationale: if a convicted felon possesses a firearm, there is a substantial risk, based on his previous serious criminal conduct, that the felon will possess the firearm for the purpose of using it to commit an act of violence. Moreover, the fact that the "felon in possession" crime is a continuing offense seems to be central to the reasoning of those courts that hold it to be a crime of violence. "[T]here is an increased risk that a criminally-inclined individual is more likely to use a firearm *already in his possession* to commit a crime." *United States v.. Washington,* 907 F.Supp. at 485. (emphasis added).

While many courts have held that the crime of being a felon in possession of a firearm is a crime of violence, there are other courts which disagree. *See e.g. United States v. Doe,* 960 F.2d 221, 222 (1st Cir. 1992)(922(g) is not a crime of violence) *United States v. Gloster,* 969 F.Supp. 92, 95 (D.D.C.1997)(same); *United States v. Powell,* 813 F.Supp. 903, 908 (D.Mass.1992)(same). The Second Circuit has not yet ruled on the issue. For purposes of deciding the instant case, however, I need not determine whether § 922(g) (felon in possession) is a crime of violence. For even assuming that it is, the generic offense of being an unlicensed importer or dealer of legally acquired firearms presents far different risks of physical harm than the type of risks relied on by courts which hold § 922(g) to be a crime of violence.

In *United States v. Phillips,* 1989 WL 156198 (D.Mass.) *aff'd,* 732 F.Supp. 255 (D.Mass.1990), the Court faced virtually the same issues presented in the instant case. The defendant in *Phillips* was charged with violating 18 U.S.C. § 922(a)(3)(causing the transportation or receipt of firearms across state lines without being a licensed firearm dealer) and § 922(a)(5)(causing an unlicensed

---

2. The charges against Carter have achieved some degree of public notoriety. According to the government's proffer and as described in the criminal complaint, Carter is alleged to have brought numerous guns to Rochester from Alabama. The firearms were allegedly defaced and

then distributed or sold to others. The government alleges that one of the firearms eventually ended up in the hands of one Paul Robinson who is accused in state court of shooting and injuring three Rochester Police Officers responding to a domestic dispute.

out-of-state firearms dealer to transport firearms across state lines). These offenses, like § 922(a)(1)(A), are not continuing possessory offenses involving prior felons, but rather make unlawful an unlicensed individual or business from transferring, selling, trading or delivering firearms across state lines. As here, the government moved for detention in *Phillips,* claiming the firearm offenses were crimes of violence under the Bail Reform Act. After determining that the statutes must be examined under the "categorical approach" to determine whether they qualify as crimes of violence, the Magistrate Judge held that the firearm offenses found in § 922(a)(3) and (a)(5) were "fundamentally different" than the felon in possession offense:

> "[T]he legislative purpose behind enacting these crimes was not so much that there was a danger of violence in the act of transportation or receipt; rather, Congress was attempting to stem the flow of illicit weapons *because they posed a danger after they had been transported and received.* In other words, the crimes set forth in 18 U.S.C. § 922(a)(3) and (5) do not, 'by their nature', involve [] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (Emphasis supplied). Rather, the nature of the crimes may be that they involve such a substantial risk after the offense, i.e. transportation, delivery, receipt, are complete, but there is nothing in the legislative history to indicate that Congress was concerned with violence being committed by non-felons while in the process of transporting weapons from state to state; what is plain is that Congress sought to regulate the interstate transportation of weapons because of the danger which Congress perceived would exist after the transportation and delivery.

*Id.* at *5 (emphasis supplied).

In determining that § 922(a)(3) and 922(a)(5) do not charge crimes of violence, the Magistrate Judge in *Phillips* also addressed the statutory requirement that to qualify as a "crime of violence" the "substantial risk" of physical force be present *"in the course of committing the offense".* 18

U.S.C. § 3156(a)(4)(B)(emphasis supplied). As here, the government in *Phillips* argued that because the imported guns could potentially end up in the hands of individuals who use them in crimes involving physical force, the firearms offenses were crimes of violence. In rejecting that argument, the Court held:

> The Government's analysis would read the phrase "in the course of committing the offense" right out of the statute. I would agree that it can be inferred that the guns were brought to Massachusetts for the purpose of being carried or used; however, the "substantial risk that physical force against the person or property of another may be used" is not present "in the course of committing" the offenses of transportation and receipt. The "substantial risk" exists not during the course of committing the offenses but rather after the transportation and receipt are complete.

*Id.* at *6. In affirming the decision of the Magistrate Judge, the district Court held:

> Although there is some risk that, in the course of transporting firearms through interstate commerce and receiving such firearms, physical force will be used (*e.g.,* if the defendants were apprehended during the transportation), I conclude that there is not a *"substantial* risk that physical force against the person or property of another may be used *in the course of"* the transportation and receipt. There is a more significant risk that physical force will be used after the unlawful transportation and receipt—that is, a risk that the defendants, now armed with the guns that they have transported, will commit acts of violence—but these defendants have not been charged in this indictment with use of firearms, or even with possession of firearms, *Risks of violence arising subsequent to the commission of the offense are not within the ambit of section 3156(a)(4)(B)'s definition of crimes of violence.*

*United States v. Phillips,* 732 F.Supp. at 262 (emphasis added).

The logic of *Phillips* is equally compelling in the case at bar. Whatever risk of physical harm that exists for a violation of 922(a)(1)(A), it exists not in the course of

illegally transporting, importing or dealing the firearms, but in the separate criminal offenses that may occur *after* the importation, transportation or dealing have long been completed. If the allegations against Carter are true, there can be no doubt that *his conduct* ultimately gave rise to a grave danger in our community. But as tempting as it may be, this Court may not hold a detention hearing so as to be able to consider individual conduct unless the government has satisfied § 3156(a)(4) and charged a "crime of violence". Using the "categorical approach" model, I am simply unable to agree with the government that the generic offense of unlicensed dealing or transporting firearms in interstate commerce is a crime which, by its nature, poses a substantial risk that physical force may be used *in the commission of the offense itself.* For these reasons, I find that the generic crime of 922(a)(1)(A) is not a crime of violence as defined in the Bail Reform Act and therefore the government's motion for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A) must be denied.

■ *Section 924 (b)* In the alternative, the government contends that the charged crime of § 924(b) also qualifies as a crime of violence. Again, there appears to be no reported opinion that supports the government's contention that § 924(b) is a crime of violence as defined in the Bail Reform Act.

18 U.S.C. § 924 is entitled "Penalties". § 924(b) provides as follows:

> (b) Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined under this title, or imprisoned not more than ten years, or both.

Section 924(b) is not a self-contained criminal violation. Rather the offense, as defined in § 924(b), "piggybacks" on the commission of some other independent felony as the predicate for a violation of the statute. Here, the predicate or piggyback offense is a violation of 18 U.S.C. 922(a)(1)(a), an offense that is by definition quite similar to the conduct made unlawful by § 924(b). Thus, the criminal complaint against Carter charges him with shipping, transporting or receiving firearms in interstate commerce with the intent to commit the crime of unlicensed dealing in firearms that had been shipped in interstate commerce.

As circular as the § 924(b) charge appears here, it seems clear that whether § 924(b) charges a crime of violence depends on the nature of the predicate felony which the § 924(b) charge is premised upon. If the predicate felony is a crime of violence, then it seems logical that the § 924(b) violation would also be a crime of violence. Conversely, if the predicate crime was not a crime of violence, then the 924(b) charge would not operate to transform the offense into a crime of violence. Based on the foregoing, and for the reasons set forth regarding § 922(a)(1)(a), I find that the violation of 924(b) set forth in the complaint against Carter does not charge a crime of violence as defined in the Bail Reform Act.

### *RISK OF FLIGHT*

■ The government also moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A), claiming that there is a serious risk that Carter will flee if released. The Government bears the burden of proving the defendant's risk of flight by a preponderance of the evidence. All parties agree that the statutory presumption of flight does not apply.

■ Unlike a motion to detain a defendant because the offense charged qualifies as a "crime of violence", a risk of flight detention motion does not require any statutory analysis. A risk of flight motion *is* a fact-specific examination of whether there exist conditions or a combination of conditions that would reasonably assure this Court that the defendant would attend future court proceedings. In contrast to a motion for detention based on the defendant being charged with a crime of violence, evidence of dangerousness is ordinarily not relevant to a risk of flight detention motion. *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988). *See also United States v. Ploof,* 851 F.2d 7, 11 (1st Cir.1988)

(where detention is based on dangerousness, "it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)"); *United States v. Himler*, 797 F.2d 156, 160 (3rd Cir.1986)(same).

 The government's proffer regarding risk of flight was insubstantial. Carter was a lifelong resident of the Western District of New York who recently relocated to Alabama. The defendant proffered that he is employed full-time in Alabama. Defense counsel represented that his office spoke to Carter's employer who stated that the defendant will be able to continue his job if released. The defendant's only criminal conviction was twelve years ago when he entered a plea of guilty to a misdemeanor gun charge. Although this 1986 gun charge was originally charged as felony, there is no evidence that the defendant failed to appear when required. In addition, in 1992 the defendant entered a plea of guilty to harassment, a violation under New York Penal law. Again, there is no evidence that the defendant failed to appear when required. Moreover, the defendant has had no contact with the criminal justice system since 1992.

The government, in support of its motion, relied on Carter's use of his mother-in-law's address on his drivers license and his brother-in-law's address on his utility bills. However, this information was satisfactorily explained during the defendant's proffer. When Carter moved to Alabama he initially resided with his mother-in-law and was residing at her home when he obtained his Alabama drivers license. The trailer he currently lives in is owned by his brother-in-law and thus the utilities are in his brother-in-law's name.

Aside from the pending federal charges, the probation department found no facts evidencing risk of flight. While the current federal charges are serious, the Second Circuit has long "required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *United States v. Friedman*, 837 F.2d 48, 50 (2d Cir.1988). Accordingly, the government's motion to detain Carter without bail based on risk of flight is denied.

### CONCLUSION

The government's motion to hold a detention hearing based upon the defendant being charged with a crime of violence is **denied**. The government's motion to detain the defendant due to a serious risk that the defendant will flee if released is **denied**. The parties are directed to appear on **February 23, 1998 at 3:30 p.m.** so that conditions of release may be set. The government may have a stay of any release order entered should it seek review of this detention decision.