**UNITED STATES of America**

**v.**

**Luis L. FERNANDEZ, Defendant.**

**No. CRIM.A.1:96–CR–16TJM.**

United States District Court,
N.D. New York.

April 10, 2001.

Daniel J. French, United States Attorney, Northern District of New York (Edward Broton, Assistant U.S. Attorney, of counsel), Syracuse, NY, for the Government.

Alex Bunin, Federal Public Defender (David Secular, Assistant Federal Public Defender, of counsel), Syracuse, NY, for Defendant.

## DETENTION ORDER

PEEBLES, United States Magistrate Judge.

This matter is currently before the court as a result of a petition alleging the defendant's violation of the terms of his supervised release in connection with a criminal conviction for receipt of stolen firearms. Among the issues now presented, *inter alia*, is the question of whether defendant is entitled to make application for release on conditions pending a revocation hearing, and, if so, the time frames and standard to be applied.

As the following demonstrates, I find that defendant is entitled to be considered for release pending the revocation hearing. Based upon my assessment of the relevant factors, however, I conclude that defendant has failed to demonstrate by clear and convincing evidence that he is neither likely to flee nor a danger to any other person or the community. I have therefore ordered his detention, and am issuing this written decision in order to set forth my reasoning for doing so, as required under 18 U.S.C. § 3142(i).

## I. BACKGROUND

The defendant in this matter was convicted in 1995 in the United States District Court for the District of North Dakota of receiving stolen firearms which have moved in interstate commerce, in violation of 18 U.S.C. § 922(j). Defendant was sentenced upon that conviction to six months of incarceration, to be followed by two years of supervised release. Following his release from prison defendant moved to Schenectady, New York, and jurisdiction over both his supervision and the underlying criminal action was transferred to this district.

On March 5, 1996 defendant was arrested by state authorities and charged with criminal sale of cocaine base ("crack"), a class B felony, in violation of N.Y. Penal Law § 220.39. Defendant was ultimately convicted on the charge, and on October 15, 1996 received a prison sentence of between five and fifteen years.

As a result of defendant's state court conviction, which the government maintains conclusively establishes that defendant did in fact violate the terms of his supervised release, a petition charging him with violation of his supervised release was filed and an arrest warrant was issued on January 6, 1997, upon authorization of then-Chief District Judge Thomas J. McAvoy. That warrant was lodged as a detain-

er, and resulted in defendant's placement into federal custody upon his release from state prison.

Following his arrest on the federal warrant, defendant was brought before me on March 19, 2001 for an initial appearance. At that time the government announced that it was seeking detention, and the defendant petitioned the court for release on conditions. As a result of those requests, as well as defendant's application for an adjournment, a detention hearing was conducted on March 22, 2001.[1] At the conclusion of that detention hearing, and after fully hearing both the government and defendant's counsel, I ordered the defendant detained.

## II. *DISCUSSION*

The threshold issue presented is whether a detention hearing should be held in this case, given the nature of the proceeding. As a related subsidiary issue I must decide whether, if a hearing is warranted, defendant should be detained pending trial, or instead released on conditions.

### A. *The Bail Reform Act Generally*

The Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3141 *et seq.*, empowers a court to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The Act, which has been up-

held in the face of constitutional challenge, is properly viewed as a permissible regulatory, or preventative, measure for use by the courts, rather than being punitive in nature. *See United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987).

Significantly, in enacting the Bail Reform Act Congress recognized "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" *United States v. Berrios–Berrios*, 791 F.2d 246, 250 (2d Cir.), *cert. dismissed*, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986) (quoting S.Rep. No. 98–225, reprinted in 1984 U.S.C.C.A.N. 3182). Accordingly, the Supreme Court has observed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755, 107 S.Ct. at 2105.

In deciding the question of detention, the court performs two important functions. First, the court exercises its historical right to preserve its jurisdiction in criminal cases by insuring that a defendant will appear as required in order to face pending charges. *Berrios–Berrios*, 791 F.2d at 250 (citing *United States v. Abrahams*, 575 F.2d 3 (1st Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978)). Additionally, the court must consider the legitimate societal interest implicated by the release of defendants charged with serious crimes.[2] *See United States v. Dillard*, 214 F.3d 88, 95 (2d Cir.2000). As

---

1. At the initial appearance the parties were advised that a revocation hearing would be held before District Judge Thomas J. McAvoy in connection with the supervised release violation petition on March 27, 2001 in Binghamton, New York.

2. In *United States v. Dillard*, the Second Circuit specifically rejected the presumption of innocence as a counterweight to society's in-

terest in pre-trial detention of defendants who seriously threaten the safety of the community. 214 F.3d 88, 102–03 (2d Cir.2000) (rejecting *United States v. Singleton*, 182 F.3d 7 (D.C.Cir.1999)). Congress, however, has statutorily clarified that "[n]othing in [18 U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

a consequence, under the Act the bail inquiry is focused upon two highly relevant issues: 1) whether the defendant is likely to present a risk to flee the jurisdiction, if released; and 2) whether the defendant presents a risk of danger to the community if released, whether conditionally or otherwise. *See Dillard,* 214 F.3d at 95; *see also* 18 U.S.C. § 3142(e).

By its very language, the Bail Reform Act demonstrates its favorable inclination toward pretrial release of federal criminal defendants. Thus, for example, the Act requires that the court *must* order release of a defendant on personal recognizance or on unsecured appearance bond (subject to the requirement that the person not commit a crime while on release) "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court cannot find that such unconditional release will reasonably assure appearance as required or guard against danger to the community, then release must be ordered upon "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community," including, though not limited to, conditions specifically listed within the statute. 18 U.S.C. § 3142(c)(1)(B).

B. *The Parties' Entitlement To A Detention Hearing*

Under the Act, pretrial detention may be ordered only following a hearing. 18 U.S.C. § 3142(e),(f). The government's right to a detention hearing, however, has been carefully circumscribed by Congress, and exists in certain specifically enumerated circumstances, including when 1) the case involves a crime of violence; 2) the case involves an offense punishable by life imprisonment or death; 3) the crime charged is a drug related offense with a maximum term of imprisonment of ten years or more; 4) the defendant is charged with a felony after having been convicted of two or more prior qualifying offenses (*i.e.,* crimes of violence, punishable by up to life imprisonment or death, or drug related offenses punishable by incarceration of at least ten years); 5) the case involves a *serious* risk of flight; or 6) the case involves a *serious* risk of obstruction or attempted obstruction of justice or intimidation of a prospective witness or juror. 18 U.S.C. § 3142(f); *see also United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988). Thus, as can be seen, dangerousness alone, in the absence of serious risk of flight, serious danger of obstruction of justice or intimidation of witnesses, or indictment for one of the specifically enumerated offenses, does not provide a basis for detention. *Friedman,* 837 F.2d at 49.

This case represents a departure from the ordinary pretrial release question typically presented. Detention in this matter is sought in connection with a charge of supervised release violation. Unfortunately, the statutory provisions governing the parties' entitlement to a detention hearing in such instances, as well as the standard and the time frame associated with it, are less then crystal clear.

Proceedings surrounding petitions seeking revocation or modification of supervised release are governed by Rule 32.1 of the Federal Rules of Criminal Procedure. *See* Fed.R.Civ.P. 32.1. That rule requires the holding of a preliminary hearing in such cases, and goes on to provide that "[i]f probable cause is found to exist, the person shall be held for a revocation hearing. The person may be released pursuant to Rule 46(c) pending the revocation

hearing. If probable cause is not found to exist, the proceeding shall be dismissed." *Id.* 32.1(a)(1).

Rule 46(c), in turn, is not entirely instructive. That section, which is entitled "Pending Sentence and Notice of Appeal", provides that

> [e]ligibility for release pending sentence or pending notice of appeal or expiration of the time allowed for filing notice of appeal, shall be in accordance with 18 U.S.C. § 3143. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.

*Id.* 46(c).

18 U.S.C. § 3143, which governs release or detention pending sentence or appeal, does not directly address the issue of detention in the context of a supervised release revocation proceeding, nor does it suggest the required time frame for conducting such a hearing. The section does imply, however, that some sort of hearing is required, since it provides that the defendant to which it applies must be detained, absent certain other specified circumstances, "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). There is no reference in that provision to

section 3142(f), which sets forth the procedures for conducting a detention hearing and, importantly, the time frame for doing so.[3]

One could argue that because the provision referring to detention is contained in Rule 32.1, which speaks to preliminary hearings, and follows the sentence related to probable cause, the detention issue need not be addressed by the court until a preliminary hearing is conducted.[4] In accordance with one possible view, then, a detention ruling need not be made unless and until probable cause is found at a preliminary hearing held within the ten day statutory time frame (unless waived).

While this interpretation is not facially implausible, I am not inclined to adopt it. Instead, I believe that in the exercise of prudence, a defendant accused of a supervised release violation should be afforded a hearing in the event that detention is sought by the government and a bail hearing is requested by the defendant, and that such a hearing should be conducted within the time frames set forth in 18 U.S.C. § 3142(f).[5] I note that while I am unaware of any reported cases specifically addressing whether a detention hearing is mandated in these circumstances, I am apparently not alone in my belief that such a hearing should be held if requested. *See, e.g., United States v. Meyers,* 200 F.3d

---

**3.** That section requires that:
> [t]he hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday).

18 U.S.C. § 3142(f)(2).

**4.** Rule 32.1 does not specify when a preliminary hearing must be held, although presumably at a minimum the ten day in-custody rule for conducting preliminary examinations under Rule 5(c) of the Federal Rules of Criminal Procedure would govern.

**5.** Obviously, such a hearing will not be necessary if a detention hearing is waived by the defendant, or the revocation hearing is held within three business days of the initial appearance.

715, 717 (10th Cir.2000); *United States v. Rodgers,* CR 90–20047, 1995 WL 7850, at *1 (N.D.Cal.1995); *Duncan v. United States,* 842 F.Supp. 1016, 1017 (M.D.Tenn. 1993).

### C. *Release Or Detention*

Having concluded that a detention hearing was warranted in this case, I must next determine "whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." *Friedman,* 837 F.2d at 49 (citing *Berrios–Berrios,* 791 F.2d at 250); *see also* 18 U.S.C. § 3142(e); *United States v. Agnello,* 101 F.Supp.2d 108, 110 (E.D.N.Y.2000). Unlike the situation with regard to pretrial detention, however, the burden is shifted in this case to the defendant to prove that he or she is neither a risk of flight nor a danger to the community. Fed.R.Crim.P. 46(c). Moreover, because of the cross reference in that section to 18 U.S.C. § 3143, presumably the enhanced "clear and convincing evidence" burden applies as well. *See* 18 U.S.C. § 3143(a)(1).

■ Section 3143(a) sets forth two separate standards, depending upon the nature of the offense involved. Under subdivision (2) of that section, a defendant awaiting sentencing on a criminal charge which would merit a detention hearing under 18 U.S.C. § 3142(f) must be detained absent a finding of a substantial likelihood that a motion for acquittal or a new trial will be granted (something which is not a consideration in this case) *or* a finding by clear and convincing evidence that the defendant is neither a risk of flight nor a danger to the community in conjunction with the government's recommendation that there be no sentence of imprisonment. 18 U.S.C. § 3142(a)(2). The issue becomes, then, whether this section applies as well

to a defendant awaiting sentencing on a supervised release violation where the underlying offense is one of those described within section 3142(f)(1), and, if so, whether the crime of trafficking in stolen firearms is one of violence within the purview of 18 U.S.C. § 3142(f)(1)(A).

Although section 3143(a) is somewhat vague, I believe that because the defendant in this case is awaiting a hearing at which a sentence relating back to his 1995 conviction will be examined and potentially modified, I must look to that conviction and determine whether it was for a crime of violence; if so, then I must apply the enhanced standard of section 3143(a)(2). In making this analysis I apply a categorical approach, rather than utilizing a fact specific or "case by case" test, and therefore look to the generic nature of the crime charged rather than to the particular facts of this case. *United States v. Jenkins,* 128 F.Supp.2d 351, 353 (S.D.W.Va.2001); *United States v. Connolly,* No. CRIM. 3:98CR233, 1999 WL 1995186, at *5 (D.Conn. Dec. 23, 1999); *United States v. Carter,* 996 F.Supp. 260, 262 (W.D.N.Y. 1998); *see also United States v. Dillard,* 214 F.3d 88, 92 (2d Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001) (assuming without deciding "that the use or risk of violence must result from the categorical nature of the offense and that the statute would not be satisfied where a defendant used violence in the commission of an offense whose nature ordinarily does not give rise to a substantial risk of violence.")

For purposes of this analysis the term "crime of violence" is defined under the Bail Reform Act, in relevant part, to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense;

..." 18 U.S.C. § 3156(a)(4)(B). In order to fall within this definition, then, a specific crime must satisfy five distinct elements, including 1) the offense must be a felony; 2) the offense must involve a "risk that physical force may be used against the person or property of another;" 3) that risk must flow from the nature of the offense; 4) the risked use of physical force must be such as would occur "in the course of" commission of the offense; and 5) that risk must be "substantial." *Dillard,* 214 F.3d at 92–93; *see also* 18 U.S.C. § 3156(a)(4)(B).

In *Dillard,* the Second Circuit Court of Appeals examined whether the offense of being a felon in position of a firearm, in contravention of 18 U.S.C. § 922(g)(1), qualifies as a crime of violence for purposes of the Bail Reform Act. Addressing the five relevant elements, the panel majority, in an opinion authored by Circuit Judge Pierre Leval, concluded that based upon a firearm's intended function, the illegal possession of a firearm involves a risk of physical force, thus satisfying the second prong.[6] 214 F.3d at 93. The court also characterized it as "undeniable that possession of a gun gives rise to *some* risk that the gun may be used in an act of violence." *Id.* (emphasis in original).

In analyzing the third element, the *Dillard* court observed that for many of the same reasons the risk of violence results from the nature of the offense. *Id.* In support of that finding the court noted the importance of the use of guns to aid in carrying out criminal acts. *Id.* As for the fourth element, the court concluded that it was satisfied on the basis that "[i]f one uses a gun in the act of violence, that violence necessarily occurs during the possession of the gun." *Id.* As to the fifth element, weighing quantiatively the level of risk associated with weapons possessed by convicted felons, the court found it significant that the statutory definition of felon excludes certain white collar and nonviolent categories, and accordingly found that "[t]he risk of violent use posed by a convicted felon's possession of firearms is significant." *Id.* at 94. The court thus went on to find that the risk was substantial, and therefore concluded that the crime of being a felon in possession of a firearm did constitute one of violence, rejecting a contrary opinion in *United States v. Singleton,* 182 F.3d 7 (D.C.Cir.1999). 214 F.3d at 97–104.

I have not been able to uncover any cases which, in the context of the Bail Reform Act, have addressed whether the crime of trafficking in stolen firearms is a crime of violence. A handful of courts have addressed other weapons offenses, however, with varying results. *In United States v. Carter,* for example, another court within this circuit, after thorough analysis, concluded that alleged violation of 18 U.S.C. § 922(a)(1)(A), which prohibits the unlicensed dealing in firearms, is not a crime of violence for purposes of the Bail Reform Act, finding that whatever substantial risk of physical force might exist, that force nonetheless would not occur in the course of committing the offense. 996 F.Supp. 260, 264–65 (W.D.N.Y.1998). In contrast, in *United States v. Jenkins,* the court concluded that stealing weapons from a federally licensed dealer, in violation of 18 U.S.C. § 922(u), is a crime of violence because in such a case there is a risk that the commission of the offense itself might result in armed confrontation, and thus the required nexus between the risk of use of physical force and the commission of the offense exists. 128 F.Supp.2d 351, 353–54 (S.D.W.Va.2001).

---

**6.** The court noted as a matter of course that the felon-in-possession offense is a felony, sat- isfying the first prong of the statutory definition. *Id.*

Applying the reasoning utilized in these cases and in *Dillard*, I conclude that the offense charged in the instant case does not qualify as a crime of violence.[7] Like the crime categorically examined by Magistrate Judge Jonathan Feldman in *Carter*, I find lacking any substantial likelihood that the risk of physical force, assuming *arguendo* that a substantial risk of its use exists, would occur in the course of committing the offense. While a person trafficking in stolen firearms may, and in most instances will, possess the firearms, at issue possession of them is not an exclusive, essential element of that crime. Moreover, a person trafficking in stolen firearms may not present the same level of risk perceived by the majority in *Dillard* as those qualifying as felons under the statute.

In sum, I find that the crime for which defendant was convicted is not one of violence.[8]

Having found that defendant was not convicted of a crime of violence, I must therefore analyze the matter further in accordance with 18 U.S.C. § 3143(a)(1).

Under that section, since the applicable guideline provisions do recommend a term of incarceration, I must order detention unless the defendant has satisfied his burden of establishing the lack of danger to the community by clear and convincing evidence.[9] I find that he has failed to make such a showing. The defendant's danger to the community is evidenced by felony convictions for both drug dealing and trafficking in stolen weapons. This chronicled criminal history alone convinces me that defendant does represent a danger to the community, and although he may well be found to have been rehabilitated as a result of his state court incarceration, and notwithstanding that he appears to have both family support and a job apparently awaiting him, I cannot find by clear and convincing evidence to the contrary.[10]

### III. *SUMMARY AND CONCLUSION*

I conclude, based upon the circumstances of this case, that defendant was entitled to seek release pending his revocation hearing, and that based upon that request and the fact that the government

7. During the course of the detention hearing I announced my inclination to find, based upon the Second Circuit's decision in *Dillard*, that the crime charged was one of violence. Having now had the benefit of further examination of the applicable statutory provisions and relevant case law, I have reversed my position on this issue. As can be seen, however, this does not alter my decision on the question of detention of this defendant since it was based upon two separate alternate bases, one of which remains viable.

8. Had I found defendants' underlying conviction was for a crime of violence, I could then have released the defendant *only* if the government was not recommending incarceration on the supervised release violation charges *and* if I found by clear and convincing evidence that he is neither a risk of flight nor a danger to the community. 18 U.S.C. § 3143(a)(2). Since the government an-

nounced that it was seeking additional incarceration, a finding that the defendant was convicted of a crime of violence would have ended the bail inquiry.

9. The guideline range for the violation alleged is between twelve and eighteen months of imprisonment. As was indicated by the government, however, because of the drug related nature of this alleged violation, a sentence of incarceration is mandatory if the charge is sustained. *See* 18 U.S.C. § 3583(g)(1).

10. Because I find that I must detain the defendant based upon his failure to demonstrate eligibility for release under 18 U.S.C. § 3143(a), I do not find it necessary to review possible release conditions in order to determine whether it is likely that such conditions would sufficient protect against the risk of flight and danger to the community which he presents.

is seeking detention, a detention hearing was properly scheduled. I also find that because the defendant was not convicted for a crime of violence, the question of his release is appropriately analyzed under 18 U.S.C. § 3143(a)(1). I find, however, that defendant has failed to establish by clear and convincing evidence that he is neither a risk of flight nor a danger to the community if released. Accordingly, it is therefore

ORDERED, that the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate to the extent practicable for persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a United States Court or on request of a Government attorney, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.