**UNITED STATES of America,**
**Appellee,**

v.

**Jumo DILLARD, Defendant–Appellant,**

**Docket No. 99–1741**

United States Court of Appeals,
Second Circuit.

Argued: Dec. 17, 1999

Decided: May 22, 2000

Joel L. Violanti, Buffalo, N.Y. (Assistant United States Attorney for the Western District of New York), for Appellee.

William Clauss, Rochester, N.Y. (Federal Public Defender for the Western District of New York), for Defendant–Appellant.

Before: MESKILL, JACOBS, and LEVAL, Circuit Judges.

Judge Meskill dissents by separate opinion.

LEVAL, Circuit Judge:

This appeal raises the question whether a previously convicted felon, charged with illegal possession of a firearm under 18 U.S.C. § 922(g)(1) and reasonably found to be so dangerous that no "combination of conditions [of release] will reasonably assure ... the safety of any other person and the community," 18 U.S.C. § 3142(e), may be detained pending trial. The answer turns on whether the offense of being a convicted felon in possession of a firearm under section 922(g)(1) (the "felon-in-possession" offense) is a "crime of violence" within the special definition of the Bail Reform Act of 1984. *See* 18 U.S.C. §§ 3142(f), 3156(a)(4). If the offense comes within the special definition, the Act commands a hearing, and the person will be detained if the court finds him too dangerous to be released on any precautionary conditions. On the other hand, if it does not fall within the definition, no detention hearing will be held (unless a different basis of detention applies), and the person must be released, no matter how likely it is that he will do violence.

The U.S. District Court for the Western District of New York (Larimer, *C.J.*) ordered the defendant detained after the Magistrate Judge (Feldman, *Mag. J.*) found that no combination of conditions of release could reasonably assure the safety of the community. The defendant does not contest the finding as to his dangerousness but contends on appeal that he must, nonetheless, be released because the felon-in-possession offense does not come within the statute's definition of "crime of violence." We reject his contention and therefore affirm the order of detention.

## BACKGROUND

In late May 1999, the police in Rochester, New York obtained information from an informant that Jumo Dillard possessed a handgun. Dillard had previously been convicted of the felony offense of criminal possession of a weapon in the third degree. *See* N.Y. Penal Law

§ 265.02. By reason of this prior conviction, Dillard was prohibited by law from possessing any firearm or ammunition. *See* 18 U.S.C. § 922(g)(1).

On June 8, 1999, the Rochester police searched Dillard's home under a warrant and found two shotguns, one of which was loaded, as well as ammunition. In the course of the search, the police obtained a sworn statement from Dillard's girlfriend, who also resided with him, that Dillard was "'involved in drugs.'" She told the police that several months prior, on March 24, 1999, some unknown individuals knocked on their door and, when Dillard answered it, fired three gun shots at him.

On July 29, 1999, a grand jury in the Western District of New York filed an indictment charging Dillard with three counts of being a felon in possession. Later on unrelated facts, Dillard was arrested on charges of criminal impersonation, criminal possession of stolen property and criminal possession of a controlled substance (seven pieces of crack cocaine).

Dillard then was arraigned on the felon-in-possession indictment. At arraignment, the government moved to detain Dillard without bail pending trial. The government took the position that the felon-in-possession offense defined by section 922(g)(1) is a "crime of violence" within the meaning of the Bail Reform Act, that a detention hearing was therefore required by 18 U.S.C. § 3142(f), and that Dillard, depending on the findings made at the hearing, might be detained. Magistrate Judge Feldman, following Chief Judge Larimer's ruling in *United States v. Campbell*, 28 F.Supp.2d 805, 807–08 (W.D.N.Y. 1998), agreed that the felon-in-possession offense was a "crime of violence" and held a hearing as mandated by subsection 3142(f). Based on the evidence at the hearing, Judge Feldman determined that Dillard was so dangerous that no conditions of release would adequately protect the community. He therefore ordered that Dillard be detained. Upon the review

provided by 18 U.S.C. § 3145(b), Chief Judge Larimer upheld the detention order.

Dillard appeals contending that the felon-in-possession offense is not a "crime of violence" for purposes of the Bail Reform Act.

## DISCUSSION

The question whether the felon-in-possession offense prescribed by section 922(g)(1) is a "crime of violence" within the meaning of the Bail Reform Act of 1984 (the "Act") is one of first impression in this Circuit. We begin by examining the felon-in-possession offense and then turn to the structure of the Bail Reform Act in relation to this question.

*The felon-in-possession offense.* The felon-in-possession statute makes it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess ... any firearm or ammunition." § 922(g)(1). The offense, however, does not apply to all crimes punishable by imprisonment for more than a year. The special definition of "crime punishable by ... a term exceeding one year" expressly excludes all offenses arising under statutes regulating business practices. *See* 18 U.S.C. § 921(a)(20)(A) ("The term 'crime punishable by imprisonment for a term exceeding one year' does not include ... any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices...."). By this definition, Congress excluded many non-violent felonies from the scope of the prohibition. (For economy of expression, throughout this opinion we use the term "felon in possession" to refer to those felons who fall within this artificially limited class of felonies defined by paragraph 921(a)(20).)

*The detention provisions of the Bail Reform Act.* Turning to the Bail Reform Act, paragraph 3142(a)(4) specifies that, for de-

fendants arrested on criminal charges, pretrial detention is available only pursuant to subsection (e).[1] Subsection (e), in turn, refers to subsection (f) for a specification of the categories of defendants eligible for pretrial detention. Subsection (f) mandates a detention hearing before a judicial officer for a defendant falling into any of six categories.[2] Three of those categories, subparagraphs (f)(1)(A)-(C), are based on the nature of the offense charged (of which the first is a "crime of violence"); one, subparagraph (f)(1)(D), on the defendant's prior record (two or more convictions for specified offenses); and two, subparagraphs (f)(2)(A)-(B), on the risk that the defendant will either flee, or obstruct justice or threaten a witness or juror. Subsection (e) specifies how the evidence at the hearing is to be weighed and provides that detention is required if the judicial officer determines that no combination of the conditions specified in subsection (c) can reasonably assure the defendant's appearance and the safety of other persons and the community.

Thus, an arrest for an offense that falls within the statutory definition of "crime of violence" requires a hearing to determine whether there exists any "condition or combination of conditions" of release that would "reasonably assure" the defendant's appearance and the safety of the community. § 3142(e). Only if the court finds at the hearing that no combination of conditions will provide such reasonable assurance may the person be detained. On the other hand, if the arrest offense is not within the statutory definition of "crime of violence," no detention hearing will be held (unless the defendant comes within some other provision for detention), and the defendant must be released, no matter how violent and dangerous.

Although subparagraph 3142(f)(1)(A) employs the term "crime of violence," the conventional meaning of that term does not govern the question. The statute uses that phrase as a term of art and provides in paragraph 3156(a)(4) a special definition that extends substantially beyond the conventional meaning of "crime of violence." Our question is therefore not whether felon-in-possession is a "crime of violence" within the conventional meaning of the term but whether it falls within the definitions assigned by the statute.

Paragraph 3156(a)(4) defines "crime of violence" in the following terms:

(a) As used in [the Act]—

1. Paragraph 3142(a)(3) also provides for temporary detention in limited special circumstances, as set forth in subsection 3142(d). *See* 18 U.S.C. § 3142(a)(3).

2. Subsection 3142(f) states:

(f) Detention hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—

(1) upon motion of the attorney for the Government, in a case that involves—

(A) a crime of violence;

(B) an offense for which the maximum sentence is life imprisonment or death;

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 et seq.); or

(D) any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—

(A) a serious risk that the person will flee; or

(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

(4) the term "crime of violence" means

 (A) an offense that has [as] an element ... the use, attempted use, or threatened use of physical force against the person or property of another;

 (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force ... may be used in the course of committing the offense; or

 (C) [certain specified sex offenses not pertinent to this case.]

■ Clauses (A) and (B) must be considered in tandem. Clause (A) covers offenses that fall within the conventional notion of a crime of violence—any offense of which an element actually involves the use or threat of force. Clause (B) is clearly intended to cast a wider net. It specifies at the outset that it relates to "any other offense"—"other" meaning other than the conventional crimes of violence specified in clause (A). It is directed at the offense that does not necessarily involve violence, but "by its nature involves a substantial risk that physical force ... may be used in the course of committing the offense." § 3156(a)(4)(B). This clause speaks to offenses that give rise to a possibility, rather than a certainty, that force may be used. This is clear from its use of the terms "substantial *risk* that physical force ... *may* be used." *Id.* (emphasis added). Force need not be an inevitable concomitant of the offense. The clause does require, however, that the risk of use of force must result from the "nature" of the offense, and its potential for occurrence must arise "in the course of committing the offense." *Id.*

A preliminary question on which the Act is not altogether clear is whether the possibility of use of force must result from the nature of the elements of the offense or whether the statute could be satisfied by an offense whose elements do not of themselves give rise to a likelihood of force, when committed in an uncharacteristically violent fashion by the particular defendant. (An example might be a characteristically nonviolent offense such as embezzlement, committed by a defendant who, in the course, threatens or commits violence against co-workers or co-conspirators.) The district court, relying on its earlier decision in *Campbell*, 28 F.Supp.2d at 807, concluded that the latter example would not satisfy the statute—the risk of force must result from the characteristics of the offense, rather than from the defendant's manner of carrying it out. *See also United States v. Singleton*, 182 F.3d 7, 12 (D.C.Cir.1999).[3] We are inclined to agree. Clause (B) specifies that the offense must *"by its nature"* involve the risk that force will be used. § 3156(a)(4)(B) (emphasis added). This suggests the requirement would not be satisfied when the risk of force results from the conduct or nature of the defendant rather than from the nature of the offense. Because we conclude the defendant in this case is eligible for detention regardless how we answer that question, we need not decide it in this case. We will assume without deciding, for purposes of this opinion, that the use or risk of violence must result from the categorical nature of the offense and that the statute would not be satisfied where a defendant used violence in the commission of an offense whose nature ordinarily does not give rise to a substantial risk of violence.

*Whether the detention provisions apply to the felon-in-possession offense.* We proceed to the analysis of the question whether the offense prescribed by section 922(g)(1) falls within the terms of 3156(a)(4)(B).

The elements of the definition provided by clause (B), § 3156(a)(4)(B), are:

(i) The offense must be a felony;

---

**3.** The majority of district court opinions addressing this question have reached the same conclusion. *See Singleton,* 182 F.3d at 10 (collecting cases).

(ii) the offense must involve a "risk that physical force may be used against the person or property of another;"

(iii) that risk must result from the nature of the offense;

(iv) the risk must be that the use of physical force would occur "in the course of" the offense; and

(v) the risk must be "substantial."

While the fifth element—the substantiality of the risk—requires a quantitative evaluation whose meaning is not clear, as to the first four elements we believe the words of the statute plainly cover the felon-in-possession offense.

 As to the first element, there is no dispute that the felon-in-possession offense is a felony.

The second element asks whether the illegal possession of a firearm involves a risk that physical force may be used against the person or property of another. Firearms are instruments designed for the use of violent physical force, whether legal or illegal. Apart from use for target practice in sport, firearms have no functional utility other than to threaten or cause harm to persons, animals, or property. Firearms are therefore generally regarded as essential equipment of police and military forces, designed to enable them to use violent force (and the threat thereof) for military and peace-keeping purposes. By the same token, firearms are conventionally regarded as essential equipment of criminals engaged in violent crime. While it is possible to commit violent crimes without possession or use of a gun (by using knives, bludgeons, brute force, acids, poisons, etc.), guns are without doubt the most potent and efficient instrument for violent crime. For that reason, they are undoubtedly the instrument of choice among the vast majority of violent criminals.

We think it undeniable that possession of a gun gives rise to *some* risk that the gun may be used in an act of violence. By definition, without possessing a gun, one cannot use a gun for the commission of a violent act; with a gun, one can. Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence.

As to the third element, for the same reasons as pertain to the second, the risk of violence results from the nature of the offense. The offense is the illegal possession of a gun by a convicted felon. The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by convicted felons.[4] Criminals who are intent on committing bank robberies, murders, extortions and other crimes of violence characteristically possess guns to aid them in such criminal acts. Without possession of guns such persons are far less capable of committing acts of violence. The prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime. By possessing guns in violation of that law, previously convicted criminals increase the risk that they may engage in violent acts. The risk results from the nature of the offense.

The fourth element requires that the violent use of the gun that is risked would occur "in the course" of the commission of the offense of its illegal possession. If one uses a gun in an act of violence, that violence necessarily occurs during the possession of the gun. Whether the person has possession of the gun only for a few seconds—the seconds during which it is used for violent purposes—or has possession for years, but uses it violently only for a few seconds, the violent use in either case necessarily occurs during—or in the course of—the possession. If that possession is illegal because the possessor is a convicted felon who is forbidden from pos-

---

4. *See infra* note 7 and accompanying text (discussing the legislative history of 18 U.S.C. § App. 1202(a)(1), the predecessor to the current felon-in-possession statute).

sessing a gun, the violent use will inevitably have occurred in the course of the commission of the offense of illegal possession. ·

■ In short, if the words of the Act carry their normal meanings, possession of a gun by its nature gives rise to a risk of its use in violence; if that violent use occurs, it will occur in the course of the possession; if the possession is a criminal offense, the violent use will occur in the course of the criminal offense of possession.[5] It therefore seems clear that the first four elements of the definition set forth in subparagraph 3156(a)(4)(B) apply to a felon's illegal possession of a handgun.

The part of the statutory analysis as to which the answer is not so clear is whether the risk of violent use by a convicted felon is "substantial." We note first that convicted felon, in this usage, does not include all persons who have been convicted of felony offenses. As noted above, the statute expressly excludes offenses arising from the regulation of business practices. *See* 18 U.S.C. § 921(a)(20)(A). Thus, persons convicted of many non-violent felonies are not covered by the prohibition. We can assume that there are convicted felons, even within the limited definition, who, notwithstanding the illegality of doing so, possess a gun for the pleasures of hunting, target practice, skeet shooting, or collecting. Undoubtedly, there are convicted felons who possess guns without posing a significant risk of violence. It is also clear,

however, that many convicted felons illegally possess guns for the express purpose of using them in aid of violent crimes.

If in place of the words "a substantial risk," the statute merely required "a risk" that physical force might be used, we would think it indisputable that the felon-in-possession offense would come within its terms. In contrast, if the statute applied only if violence would *inevitably* result from the commission of the offense, it would be equally clear that the felon-in-possession offense would not come within its terms. Given the fact that different circumstances of the felon-in-possession offense produce different degrees of risk of violent use of the illegally possessed firearm, the question is whether that risk is *substantial.*

Recognizing that the meaning of the statute on this issue is not absolutely clear, we think the most logical interpretation leads to the conclusion that the risk is substantial. The risk of violent use posed by a convicted felon's possession of firearms is significant. The category of persons under consideration is limited to those who (a) have already been convicted of one felony (not including crimes of business regulation) and (b) have been charged with a second. Given the further fact that the issue arises only with respect to persons possessing a gun notwithstanding the illegality of doing so, we think the risk of violent use arising from the nature of the offense cannot be regarded as insubstantial. For the risk to be "substantial," it is

5. The dissenting opinion bases its argument on the novel proposition that "a felon is 'in the course of committing the offense' [of illegal possession of a firearm] only when he obtains the weapon." That course, it asserts, "is a very, very short course," and the majority engages in sophistry when it views the course of committing the offense of illegal possession as continuing throughout the illegal possession.

The offense proscribed by section 922(g)(1) is not the felon's "acquisition" of a firearm; it is the felon's possession of a firearm. The offense continues to be committed as long as the felon continues to be in possession.

If the dissent were correct, a felon found in possession more than five years after obtaining the firearm would be entitled to dismissal based on the statute of limitations. *See* 18 U.S.C. § 3282. The courts, however, have held that the limitations period runs from any act of possession that is the subject of the prosecution. *See, e.g., United States v. Greever,* 134 F.3d 777, 778–79 (6th Cir.1998); *United States v. Fuzer,* 18 F.3d 517, 518 (7th Cir.1994). The "course" of the commission of the offense is the course of the illegal possession.

certainly not necessary that all or even most such illegal possessions create the risk of violence. It is sufficient that the risk be material, important, or significant. We think that among the convicted felons who illegally possess guns, the number who do so by reason of the utility of guns in threatening or causing violence is significant. We find it difficult to accept the proposition that the risk of violent use of guns by convicted felons who possess them illegally is not "substantial."

Because the meaning of the Act on this point is open to dispute, we look for further guidance to legislative history. While the relevant legislative history contains passages that could be cited in support of both sides of the question,[6] the most compelling indications drawn from the legislative history of the Bail Reform Act and the felon-in-possession statute support the conclusion that, had Congress focused on the very question, it would have intended felons illegally in possession to be eligible for detention under the Act.

Prior to the 1984 Act the law previously in effect (the Bail Reform Act of 1966) made no provision for detention by reason of the defendant's dangerousness to protect the community. Under· the old law, judges were either releasing dangerous defendants or abusing the intended purpose of bail, by setting it a level higher than the defendant could make. *See* S.Rep. No. 98–225, at 5 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3188 (report of the Senate Judiciary Committee on the Bail Reform Act of 1984, stating that under the old law "[i]f a court believes that a defendant poses ... a danger [to community safety], it faces a dilemma—either it can release the defendant prior to trial despite these fears, or it can find a reason, such as risk of flight, to detain the defendant (usually by imposing high money bond). In the committee's view, it is intolerable that the law denies judges the tools to make honest and appropriate decisions regarding the release of such defendants."). One of the major reforms of the new statute was the provision for pretrial detention of numerous categories of dangerous defendants. And the Senate Report made clear indication that this was a major purpose of the Act. The pre-existing law "provid[ed] too little flexibility to judges in making appropriate release decisions regarding defendants who pose serious risks of ... danger to the community." *Id.* (internal quotation omitted). The report suggested that the Act arose from a "broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions." *Id.* at 6, 1984 U.S.C.C.A.N. at 3188.

The legislative history of the felon-in-possession provision confirms that Congress regarded convicted felons as persons "who pose serious risks of ... danger to the community." In sponsoring the predecessor to the current felon-in-possession offense,[7] Senator Long explained that the purpose of prohibiting certain categories of people, including "convicted felons," from possessing firearms was because these are "persons who, by their actions, have demonstrated that they are dangerous, or that

6. The portion of the legislative history that arguably supports the opposite interpretation is a sentence to the effect that the offenses covered by the phrase "crime of violence" are "essentially the same categories of offenses" that can result in detention under the District of Columbia Code. At the time of the passage of the Bail Reform Act, the District of Columbia Code did not permit detention for illegal gun possession, which was not a felony at that time. For a discussion of this history, see *infra* pp. 98–100.

7. The predecessor to the current felon-in-possession offense, 18 U.S.C. § 922(g)(1), was enacted as an amendment to the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.App. § 1202(a)(1). Section 1202(a)(1), which prohibited felons from receiving, possessing or transporting firearms, partially overlapped with the then extant provisions of section 922(g)(1) (enacted as another provision within the same Act), which prohibited felons from shipping or transporting firearms. In 1986, section 1202(a)(1) was repealed, and the language concerning possession was added to section 922(g)(1).

they may become dangerous. Stated simply, they may not be trusted to possess a firearm without becoming a threat to society." 114 Cong. Rec. 14,773 (1968); *see also id.* at 13, 868 (statement by Senator Long, in introducing the felon-in-possession provision that "[w]e do not want the habitual criminals who have committed all sorts of crimes armed and presenting a hazard to law-abiding citizens.").

The task of a court construing an unclear statute can be seen as attempting to discern what position the legislature would have taken had it focused on the specific question while passing the legislation. *See* Richard Posner, *The Problems of Jurisprudence* 273 (1990) ("When confronting unclear statutes, judges ... have to summon all their powers of imagination and empathy, in an effort ... to place themselves in the position of the legislators who enacted the statute that they are being asked to interpret."); 1 William Blackstone *Commentaries* *62 ("For, since in laws all cases cannot be foreseen or expressed, it is necessary that when the general decrees of the law come to be applied to particular cases, there should be somewhere a power vested of defining those circumstances which (had they been foreseen) the legislator himself would have expressed.").

To construe the felon-in-possession offense as coming within the Bail Act's definition of crime of violence does not cause any consequences Congress is likely to have wished to avoid. On the other hand, construing felon-in-possession to fall outside the Act's definition leads to consequences that seem directly opposed to Congress's intentions. The conclusion that the felon-in-possession offense is within the definition of crime of violence does not cause the defendant's detention. It does no more than cause a hearing to consider whether the defendant is in fact dangerous (or likely to flee). The defendant will be detained only if the judicial officer finds that "no condition or combination of conditions [of release] will reasonably assure" the person's appearance and the safety of others. 18 U.S.C. § 3142(e). If that finding is not made, the person must be released. Thus, the hunter, target shooter, or gun collector will presumably be released after the hearing, especially if his offense of conviction characteristically does not involve violence. (And if the district judge fails to do so without good reason to believe the defendant poses a substantial risk of danger, the order of detention will be set aside on appeal.) Thus, finding the element of "substantial risk" to be satisfied by the felon-in-possession offense does not result in categorical assumptions that will lead to unwarranted detention. It merely raises a warning sign, requiring the court to look with particularity at the individual facts to determine whether detention is warranted. We see no reason why Congress would have wished to reject that understanding of the Act.

In contrast, the conclusion that felon-in-possession does not come within the Bail Reform Act's definition of "crime of violence" would do serious harm to the Act's objectives. Felons in possession undoubtedly include many whose illegal possession of firearms is intended for violence. The conclusion that the offense is not a "crime of violence" would mean that no matter how obviously dangerous or how bent on committing an act of violence or terrorism the felon in possession may be, he cannot be detained unless some other statutory basis for detention can be found. The question whether the defendant poses a danger to the safety of the community under subsection 3142(e) cannot be considered unless the defendant is found to be eligible for detention under subsection 3142(f). A defendant who is not eligible must be released, notwithstanding dangerousness.[8]

---

8. We recognize that in addition to "crime of violence" subsection 3142(f) indicates a second basis of detention based on dangerousness, but it applies only in narrow circumstances—where the defendant threatens the safety of a witness or juror. *See* 18 U.S.C.

We believe that had Congress explicitly focused on the issue it would have by far preferred the construction that subjects the felon illegally in possession to a detention hearing, following which he will be released if not found to be dangerous, than the construction that would mandate the release of all felons in possession regardless how clearly they endanger the community.

Our consideration of the precise words of the Act, coupled with the legislative history to aid in the interpretation of ambiguous provisions, leads us to the conclusion that the crime of felon-in-possession under section 922(g)(1) falls within section 3156(a)(4)(B); "by its nature," the offense of illegal gun possession by a person previously convicted of a felony offense (not including business-regulating offenses), "involves a substantial risk that physical force … may be used in the course of committing the offense." The vast majority of courts that have considered the question have agreed with this interpretation.[9]

*U.S.A. v. Singleton.* The one circumstance that gives us pause is that the only Court of Appeals to have considered the question—the D.C. Circuit—reached the opposite conclusion. *See United States v. Singleton,* 182 F.3d 7 (D.C.Cir.1999). *Singleton* concluded that the "plain meaning"

of 3156(a)(4)(B) necessarily excludes the felon-in-possession offense. *Id.* at 9.

We have carefully studied the *Singleton* opinion and do not find it persuasive. In our view, there are numerous flaws in its analysis and reasoning. (a) The opinion fluctuates between the claim that selected passages from the legislative history advanced by the defendant reveal the congressional intent and compel the court's reading of the statute's "interpretative uncertainty," *id.* at 13, and the claim that the Act's "plain meaning" bars the court from considering the manifestations of legislative intent advanced by the government. (b) Neither claim is persuasive. In our view, *Singleton* misperceives the excerpts from the Senate Report on which it relies. As for the "plain meaning" of the statute, it is not plain, and if it were, it would not compel the court's interpretation. (In part, furthermore, the supposed plain meaning is based in part on the court's misinterpretation of the scope of the felon-in-possession statute.) (c) The opinion attributes to the Supreme Court in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) views that the Supreme Court did not express. (d) The opinion relies on the presumption of innocence and attributes to the Supreme Court the view that the presumption of innocence supports the *Singleton* court's interpreta-

§ 3142(f)(2)(B). It has no application to a defendant who poses a threat of violence to persons other than a witness or juror.

9. *See United States v. Spry,* 76 F.Supp.2d 719, 720–22(S.D.W.Va.1999); *United States v. Kirkland,* No. CRIM. A. 99–143, 1999 WL 329702, at *2–3 (E.D.La. May 21, 1999); *United States v. Chappelle,* 51 F.Supp.2d 703, 704–05 (E.D.Va.1999); *United States v. Campbell,* 28 F.Supp.2d 805, 808–10 (W.D.N.Y. 1998); *United States v. Floyd,* 11 F.Supp.2d 39, 40 (D.D.C.), *aff'd,* 172 F.3d 921 (D.C.Cir. 1998) (unpublished); *United States v. Hardon,* 6 F.Supp.2d 673, 676 (W.D.Mich.), *rev'd,* 149 F.3d 1185 (6th Cir.1998) (unpublished); *United States v. Butler,* 165 F.R.D. 68, 71–72 (N.D.Ohio 1996); *United States v. Washington,* 907 F.Supp. 476, 485 (D.D.C.1995); *United States v. Trammel,* 922 F.Supp. 527, 530–31 (N.D.Okla.1995); *United States v. Sloan,* 820 F.Supp. 1133, 1138–41 (S.D.Ind.

1993); *United States v. Aiken,* 775 F.Supp. 855, 856–57 (D.Md.1991); *United States v. Phillips,* 732 F.Supp. 255, 262–63 (D.Mass. 1990); *United States v. Johnson,* 704 F.Supp. 1398, 1399–1401 (E.D.Mich.1988). Only four district courts have held that felon-in-possession is not a "crime of violence" for purposes of the Bail Reform Act, and in so doing, they generated a split within the opinions of their respective districts. *See United States v. Robinson,* 27 F.Supp.2d 1116, 1118–19 (S.D.Ind. 1998); *United States v. Gloster,* 969 F.Supp. 92, 98 (D.D.C.1997); *United States v. Powell,* 813 F.Supp. 903, 909 (D.Mass.1992); *United States v. Whitford,* No. 92–73–J, 1992 WL 188815, at *3–4 (D.Mass. July 27, 1992). (The above-listed decisions of the District Court for the District of Columbia were overruled by *United States v. Singleton,* 182 F.3d 7 (D.C.Cir.1999), which is discussed below.)

tion. In fact, the Supreme Court made no such suggestion, and Congress, in passing the Act, expressed an unmistakably clear intent to detain dangerous persons prior to trial notwithstanding the presumption of innocence. (e) In the final analysis, *Singleton*'s interpretation undermines Congress's intent to make detention available for a broad category of potentially dangerous defendants, if determined at a hearing to be in fact dangerous. We elaborate each of those observations.

(a) At the outset of its discussion of the meaning of clause (B)'s definition of "crime of violence," *Singleton* asserts that the " '[i]nterpretative uncertainty' [as to the reach of the statute] must be resolved in the light of ... Congressional intent" as revealed in selected passages from the Senate Report. 182 F.3d at 13. Seven paragraphs later, confronting the government's argument that the legislative history in fact favors the government's view, the court takes the position that the plain meaning of the words of the statute bar the court from considering the legislative history. *See id.* at 15.

We recognize, of course, that if the meaning of the Act were in fact unambiguously clear, the force of the *Singleton* opinion would not be diminished by the court's reference to additional evidence supporting the plain meaning. By the same token, if the interpretive aids the court relied on properly supported its interpretation of ambiguous provisions, the correctness of its ruling would not be undone by the fact that it wrongly claimed the meaning was plain.

But as we explain in greater detail below, the external interpretive aids invoked by *Singleton* are in some cases strained and unconvincing, in others irrelevant. And we can see no justification for the court's claim that the Act unambiguously excludes the felon-in-possession offense. In our view, both claims fail.

(b) *The Senate Report.* While refusing on the grounds of "plain meaning," even to consider the passages from the legislative history of the Bail Reform Act that argue for inclusion of the felon-in-possession offense within the meaning of clause (B), *Singleton* relies on two excerpts from the Senate Report to resolve the "interpretative uncertainty" by exclusion. The quoted passages do not support *Singleton's* reading.

First the opinion cites a statement from the Senate Report that pretrial detention "is necessary for only a 'small but identifiable group of particularly dangerous defendants.' " *Id.* at 13 (citing S.Rep. No. 98–225, at 6 (1984), 1984 U.S.C.C.A.N. at 3189). This is undoubtedly correct but it does not support *Singleton*'s conclusion that felons in possession are *ineligible* for detention. No defendant may be detained by reason of dangerousness unless after a hearing the court finds the defendant so dangerous that no condition or combination of conditions of release can reasonably assure the safety of the community. Thus only the most dangerous defendants are detained. This is because the required hearing results in the release of all others. The quoted statement furnishes no reason to believe that felons illegally in possession of guns are excluded from consideration for detention.

*Singleton* further relies on the statement from the Senate Report that " '[t]he offenses set forth in Subsection (f)(1)(A) through (C) [of section 3142, namely, crimes of violence, offenses punishable by life imprisonment or death, and narcotics offenses carrying a maximum ten-year imprisonment] are ... essentially the same categories of offenses described in the District of Columbia Code' by the terms *dangerous crime* and *crime of violence* for which a detention hearing may be held under that statute." *See id.* at 13 (quoting S.Rep. No. 98–225, at 6 (1984), 1984 U.S.C.C.A.N. at 3188 (ellipsis in original; bracket material added)). Because the District of Columbia Code at the time did not provide for detention for felons in pos-

session (it now does),[10] *Singleton* relies on the above quoted statement as meaning that Congress intended to exclude the felon-in-possession offense from the scope of eligibility for detention under the federal statute. *See* 182 F.3d at 13 n. 11 ("Congress wanted to incorporate the list of crimes that were then listed in the D.C. Statute.")

This argument has some appeal, but ultimately is not convincing. The sentence quoted from the Senate Report does not assert that the offenses detainable under section 3142 *are the same* as those covered in the D.C.Code. It makes a far more vague and general statement that the offenses covered by subparagraphs f(1)(A) through (C) of section 3142 are "*essentially* the same *categories* of offenses described in the [D.C.] Code." It is a stretch to infer from so general a statement that the federal act, despite its broader language, must exclude all offenses not covered by the D.C.Code.

Indeed, a close examination of the D.C.Code shows the argument is unjustified. Section 23–1322 of the D.C.Code provides for the possibility of detention in a case that involves "[a] crime of violence, or a dangerous crime, as these terms are defined in § 23–1331." D.C.Code § 23–1322(b)(1)(A). The latter section lists numerous offenses as coming within "dangerous crime" and "crime of violence." *See* D.C.Code § 23–1331(3)–(4). With the exception of burglary, *all* the offenses listed in the D.C.Code at the time of the Bail Reform Act's passage either involve violence as an element (and are therefore comparable to the offenses covered in the federal act by clause (A) of section 3156(a)(4)), or are drug offenses covered in the federal statute by subparagraph 3142(f)(1)(C). If the *Singleton* court were correct that no federal offense may be deemed covered if it was not included in the D.C.Code's list, then clause (B) (of section 3156(a)(4)), describing offenses that by their nature involve a substantial risk of force, would apply to nothing but burglary.

Had Congress intended to cover nothing other than burglary, one would think it would have simply said "burglary," rather than writing a complex, subtly-crafted, open-ended definition, designed to encompass crimes that do not involve violence as an element but are likely to result in violence.

In our view the Senate Report was making no more than the general statement conveyed by the words it used that the offenses covered in the federal statute are "essentially the same categories" as those covered by the D.C.Code—i.e., crimes of violence, drug crimes, and offenses punishable by death or life imprisonment; it did not express an intent to include only the offenses listed in the D.C.Code (and hence only burglary) within clause (B).[11] Rather, we believe clause (B) was intended to cover the types of crimes it describes—those that by their nature involve a substantial risk of violence.

(c) *Singleton's claim of "plain meaning" is strained, and in part based on a misreading of section 922.* The *Singleton* opinion offers three reasons why inclusion of the felon-in-possession offense is incompatible with the plain meaning of the words of the statute. In our view, none of these is convincing.

**10.** A provision including the possession of firearms within the definition of "dangerous crime" was added to the D.C.Code in 1997. *See* D.C.Code § 23–1331(3)(F) (*as amended by* the Zero Tolerance for Guns Amendment Act of 1996, D.C. Law 11–273 (1997)).

**11.** The government argued in *Singleton* that the reason for the different scope of coverage was that at the time, under D.C. law, unlike federal law, the offense of illegal firearm possession was not a felony. The *Singleton* court categorically asserts that this is "irrelevant" and that "Congress wanted to incorporate the list of crimes that were then listed in the D.C. Statute." 182 F.3d at 13 n. 11. There is no basis for this assertion other than the vague "essentially the same categories" statement quoted above.

First it argues that inclusion of felon-in-possession is incompatible with the Act's requirement of the risk that force may be used "*in the course of committing the offense.*" *See* 182 F.3d at 14 (emphasis added). The offense is the illegal possession of the gun. The force that may be used is the use of the gun in an act of violence. The government argued in *Singleton* (as before us) that one who possesses a gun illegally and uses it in an act of violence has done the latter *during*, and therefore *in the course of*, the illegal possession. That seems to us to be an entirely natural reading of the words of the statute

· The *Singleton* court, however, asserts that this interpretation "fails to respect the words and context" of the Act. *Id.* It argues that "the nexus requirement ... is more than merely temporal." *Id.* "[S]ome aspect of the charged offense must create the risk of violence." *Id.* Although we do not dispute that this is a possible reading, we are at a loss to see why the "plain meaning" of the words requires it. The opinion points to nothing that shows why the words "in the course of" should not be satisfied by a violent gun use that occurs during the course of the illegal gun possession.

But even if *Singleton*'s interpretation were dictated by the plain meaning, we would not understand why the felon-in-possession offense would not satisfy this test. *Singleton* asserts, "[S]ome aspect of the charged offense must create the risk of violence in order to itself qualify as a crime of violence." *Id.* Doesn't the possession of a gun create a risk that the gun will be used violently? Isn't that the very

reason Congress chose to prohibit the possession of guns by convicted felons?[12]

As a second reason for the Act's exclusion of the felon-in-possession offense, *Singleton* asserts that "the relationship between possession and use of a firearm is sufficiently attenuated that possession alone does not" satisfy the requirement that the risk be "substantial." *Id.* (citing § 3156(a)(4)(B)). We recognize, as we stated above, that the word "substantial" is imprecise. Because of that uncertainty, if *Singleton* had studied the legislative history and found indications that Congress intended to require a more direct or more certain relationship between the prohibited act and the violence to satisfy the requirement of a *substantial* risk, its interpretation of the ambiguity would be reasonable. But *Singleton* refused to examine Congress's intent. We see no basis for the argument that the words "substantial risk" so plainly excludes the relationship between the illegal possession of a gun and its violent use as to forbid consulting congressional intent. There is nothing in the plain meaning of the words that dictates this result.

The opinion concludes its "plain meaning" analysis stating, "[E]ven if we accept that a substantial risk of violence arises merely because a potentially violent person possesses an instrumentality of violence, the government's theory would still be overbroad because not all felons are potentially more violent than non-felons." 182 F.3d at 15. "Numerous felonies involve economic crimes or regulatory offenses which, while serious, do not entail a substantial risk of physical force." *Id.* There are two flaws in this reasoning. First, the court overlooked that the definitions gov-

12. *Singleton* offers burglary as the "classic example" of an offense that satisfies the test. 182 F.3d at 14. "The risk of violence ... is not merely temporally coincident with the offense, but arises from the actions of the burglar in committing the crime itself, and the likely consequences that would ensue upon the intervention of another person." *Id.* It seems to us that the risk that the illegal possessor of a gun will use it in a violent act arises from his decision to possess the gun illegally. A criminal who has no gun cannot use it in an act of violence. Indeed, it seems undeniable that in the case of many convicted felons, the reason why they possess guns illegally is to be able to use them in future acts or threats of violence.

erning section 922(g)(1) expressly exclude "offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A). The felon-in-possession statute does not apply to many of the crimes *Singleton* had in mind.

We recognize that this is not a complete answer because, despite the exclusion, felonies under section 922(g)(1) do include some characteristically non-violent offenses such as embezzlement and perhaps fraud.

But *Singleton*'s logic is also fallacious. The government's theory does not assume, as *Singleton* contends, that "all felons are potentially more violent than non-felons." 182 F.3d at 15. The underlying proposition is only that the risk of violence resulting from a convicted felon's illegal possession of firearms is "substantial." Nothing about this conclusion depends on all convicted felons being more dangerous than non-felons. In fact, the reasoning underlying inclusion of felons in possession is no more arbitrary than the reasoning that led Congress to pass section 922(g)(1)—the statute that prohibits convicted felons from possessing firearms.

In short, to the extent the *Singleton* opinion purports to rely on "plain meaning," the meanings it relies on as justification for refusal to look at contrary manifestations of congressional intent, are anything but plain. And to the extent the opinion relies on expressions of congressional intent, this reliance is defective both because the opinion looks only at the fragments that favor its point of view, and because those fragments do not in fact convey the message the opinion reads into them.

(c) *Singleton's* reliance on *Salerno.*

(i) *Singleton* claims its position is inferentially supported by the Supreme Court's interpretation of the Bail Reform Act in *Salerno.* We find no such message in the *Salerno* majority's opinion. In *Salerno*, the Court upheld the constitutionality of the detention provisions of the Act. In support of the proposition that the detention provisions are intended for regulatory rather than punitive purposes, the Court noted:

> [T]he incidents of pretrial detention [are not] excessive in relation to the regulatory goal Congress sought to achieve. The . . . Act carefully limits the circumstances under which detention may be sought to the most serious of crimes. See 18 U.S.C. § 3142(f) (detention hearings available if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders.)

481 U.S. at 747, 107 S.Ct. 2095.

*Singleton* argues that by this statement the Supreme Court suggested the felon-in-possession offense cannot qualify for detention because detention was reserved by Congress for "the most serious" offenses, and the felon-in-possession offense is not sufficiently serious to fit in that category. *See* 182 F.3d at 13. To read the Supreme Court's language as suggesting that the Court had made such an analysis is a tremendous stretch.

In our view, the Supreme Court's words in context say nothing more than that "crimes of violence," high penalty drug crimes, and offenses punishable by death or life imprisonment are among "the most serious," and that Congress limited detention eligibility to these categories. There is no basis for reading those words as implying that the Supreme Court has construed the Act to exclude crimes like felon-in-possession. The holding in *Salerno* that the Act is constitutional ultimately turned on a balancing of the government's "regulatory interest in community safety" with the "individual's liberty interest." *Salerno*, 481 U.S. at 748, 107 S.Ct. 2095. In concluding that the Act appropriately balanced those interests, the Court observed that the "Act carefully limits the circumstances under which detention may be

sought" and noted that these circumstances were crimes of violence, offenses carrying sentences of life imprisonment or death, serious drug offenses, and certain repeat offenses—in other words, the most serious crimes. *Id.* at 747, 107 S.Ct. 2095. We do not think that in this passage from *Salerno* the Supreme Court was holding that the Act is constitutional because it keeps down the number of hearings.

Furthermore, the *Singleton* court's claim that felon-in-possession is not a sufficiently serious offense to qualify for detention is difficult to square with *Singleton*'s express acknowledgment that burglary qualifies.[13]

(d) *The presumption of innocence.* The *Singleton* opinion relies heavily on the presumption of innocence, to which it repeatedly refers during the course of its analysis.

At the outset of its discussion, the opinion states, "[T]he Supreme Court has already recognized that Congress limited pretrial detention of persons *who are presumed innocent* to a subset of defendants charged with crimes that are 'the most serious'...." 182 F.3d at 13 (emphasis added) (citing *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095).

Subsequently, in the course of its discussion, it again cites *Salerno* for the proposition that "the policy considerations in favor of limiting felons' rights to possess firearms differ substantially from those in favor of pretrial detention of people who are presumed innocent." *Id.* at 15 (citing *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095); *see also id.* at 16 (referring to the presumption of innocence a third time).

The implication of these passages is that the *Salerno* opinion identified the presumption of innocence as a significant counterweight to eligibility for detention under the Act.

In fact, the Supreme Court said nothing of the kind—at least not the majority. The majority opinion never even mentions the presumption of innocence, except perhaps implicitly in its emphatic rejection of defendants' argument that "government may not detain a person prior to a judgment of guilt in a criminal trial." *Salerno*, 481 U.S. at 749, 107 S.Ct. 2095.[14]

In addition, the Supreme Court made clear in *Bell v. Wolfish* that the presumption of innocence plays the role of placing the burden of proof of guilt beyond reasonable doubt on the government and protecting defendants from punishment without conviction; "it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Still more important, neither the Act nor its legislative history express any intention that the provisions specifying eligibility for detention be narrowly construed in deference to the presumption of innocence. A comparison of the Bail Reform Act of 1984 with the pre-existing law shows that the principal intended "reform" was to expand enormously the circumstances in which defendants were to be detained prior to trial. The Act explicitly commands consideration of pretrial detention for numerous categories of defendants, all of whom are protected by the presumption of innocence. What is more, as to defendants arrested for drug offenses carrying a maximum term of ten years, the Act specifies, "Subject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure

---

**13.** If a stowaway or drifter who commits the crime of burglary on a vessel or in a railroad boxcar, *see* 18 U.S.C. §§ 2117, 2199, is sufficiently dangerous to be eligible for a detention hearing, we would think the same would be true of a convicted bank robber found in illegal possession of a sawed-off shotgun.

**14.** It is the dissenting opinion in *Salerno* that discusses the presumption of innocence and concludes that preventive detention prior to a finding of guilt violates the constitutional presumption. *See* 481 U.S. at 762–66, 107 S.Ct. 2095 (Marshall, J., dissenting).

the appearance of the [defendant] . . . and the safety of the community." 18 U.S.C. § 3142(e). The factors the Act prescribes to be considered in determining whether the defendant should be detained include "the weight of the evidence" and "the danger . . . that would be posed by the person's release." § 3142(g). They do not include reference to the presumption of innocence.

The Senate Report confirms, as noted above, that a principal purpose of the Act was to require the pretrial detention of dangerous defendants.[15] Clearly Congress in passing this Act did not believe the presumption of innocence should bar the pretrial detention of defendants who seriously threaten the safety of the community.[16]

We do not agree with *Singleton* that the presumption of innocence requires courts to construe the Act narrowly. We believe that Congress intended to provide for the possible detention (depending on the facts determined at a hearing) of persons charged with a crime that may pose a substantial risk of violence, exactly as Congress provided in Clause (B).[17]

(e) We believe finally that the consequences of the *Singleton* opinion seriously undermine the objectives Congress sought to achieve in using detention to protect the public from dangerous individuals.

At the conclusion of its reasoning, *Singleton* suggests that its ruling has no serious adverse consequences. Its interpretation "does not deprive the government of an opportunity to detain armed felons

---

**15.** *See supra* pp. 94–95 (discussing S.Rep. No. 98–225, at 5–6 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3188).

**16.** The Act asserts in § 3142(j) that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." § 3142(j).

**17.** *Singleton* also argued by comparison to a provision of the Sentencing Guidelines, which provides penalty enhancements for "career offenders." *See* 182 F.3d at 15–16 (discussing U.S.S.G. § 4B1.1). Under U.S.S.G. § 4B1.1, one sentenced for a felony "crime of violence," who has two prior felony convictions for crimes of violence, is deemed a "career offender" and may receive a higher sentence than that which would otherwise be applicable. The definition of "crime of violence" for purposes of U.S.S.G. § 4B1.1 is similar to that contained in clauses (A) and (B) of section 3156(a)(4) of the Bail Reform Act. *See* U.S.S.G. § 4B1.2 (establishing that "crime of violence" means "any offense . . . punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another").

The Sentencing Commission established in an application note to the "career offender" provision that " 'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, application note 1. *Singleton* concluded that the Commission's exclusion of the felon-in-possession offense from "crimes of violence" under the "career offender" provision suggests that the same exclusion should apply to pretrial detention. *See* 182 F.3d at 16.

We disagree. In our view, the Sentencing Commission's determination that felon-in-possession is not a "crime of violence" under the Guidelines' "career offender" sentencing enhancement has little bearing on whether felon-in-possession is a "crime of violence" for purposes of the Bail Reform Act. While the Sentencing Commission has broad authority to interpret the Sentencing Guidelines, *see* 28 U.S.C. §§ 994, 995, it has no authority to interpret the Bail Reform Act. More importantly, the considerations at stake in the "career offender" sentencing provision are vastly different from those affecting release or detention. *See Campbell*, 28 F.Supp.2d at 809 (W.D.N.Y.1998) (holding that "the term 'crime of violence' should have a broader scope [with respect to pretrial detention] than it does with respect to sentencing issues," because "in the pretrial detention context," there is "greater risk to the community and less information before the court"). Thus, the Sentencing Commission's conclusion that felon-in-possession is not a "crime of violence" for purposes of the Guidelines' "career offender" provision has no influence on whether felon-in-possession is a "crime of violence" under the Bail Reform Act. Statutes and rules created in different contexts and for different purposes may have different meanings, notwithstanding the use of similar words.

In his Petition for Rehearing, Dillard argues that by construing the felon-in-possession offense to be a "crime of violence" for purposes of the Bail Reform Act, we illogically compel the same reading of another statute, 18 U.S.C. § 924. We disagree. Given the different contexts and different purposes of the statutes, courts retain ample latitude to interpret them differently if Congress intended them to have different meanings.

when other circumstances warrant." 182 F.3d at 15. It goes on to recite that detention remains available for defendants with two prior felony convictions, for defendants who are likely to flee and those likely to obstruct justice—the apparent implication being that the Act furnishes fully adequate opportunity to detain the truly dangerous defendants.

We respectfully disagree. In the first place, the reasoning of *Singleton* carries far beyond the felon-in-possession offense. As it depends on the proposition it reads into the Senate Report that no offenses are covered except those covered in the D.C.Code, and the D.C.Code did not at the time include any regulatory offenses relating to possession or traffic in firearms and explosives, *Singleton* effectively bars detention by reason of dangerousness of persons charged with many offenses that involve a substantial risk of violence. These include the possession of and trafficking in machine guns and other automatic weapons, *see* §§ 922(a)(4), 922(*o*)(1); bombs, grenades, and destructive devices, *see* §§ 922(a)(4), 921(a)(4); rocket launchers with silencers and blast suppressors, *see* §§ 922(g)(1), 921(a)(3)(C), 922(a)(4); sawed-off shotguns, *see* §§ 922(a)(4), 921(a)(6); assault weapons and guns with obliterated serial numbers, *see* § 922(k); guns designed to escape detection by metal detectors, *see* § 922(p)(1); biological agents, toxins, or delivery systems, *see* 18 U.S.C. § 175; chemical weapons, *see* 18 U.S.C. § 229; and undetectable plastic explosives, *see* 18 U.S.C. § 842(n)(1); *see also* 18 U.S.C. § 1716 (prohibiting the mailing of various poisons and explosives).

Of course it is true that if the defendant is likely to flee or is subject to detention under some other facet of subsection 3142(f), he may be detained. But not all persons who intend acts of violence are likely to flee. Those well established in their community may hope to escape detection but not to flee. Some indeed who are intent on vengeful violence against an alienated spouse or former lover or abuser,

or on violence as a political statement may have no thought either of fleeing or of escaping detection. In section 3156(a)(4)(B) Congress sought to protect society against such violence by providing for the detention of truly dangerous persons charged with offenses that involve a substantial risk of violence. The *Singleton* opinion excluded all defendants from the scope of that section except those charged with burglary. In our view that interpretation seriously undermines Congress's objective, taking unprincipled liberties with both the words of the statute and its legislative history. We believe the crime of illegal possession of a firearm by a previously convicted felon involves exactly what section 3156(a)(4)(B) postulates—a substantial risk of violence. We accordingly affirm the district court's decision to detain the defendant.

## CONCLUSION

The order of detention is affirmed.

MESKILL, C. J., dissenting:

I believe that the plain language of the "crime of violence" definition in the Bail Reform Act, 18 U.S.C. § 3156(a)(4), compels a different result than that reached by the majority. Therefore, I respectfully dissent.

A "crime of violence" is defined as one "that, by its nature, involves a substantial risk that physical force ... may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). The critical limitation in this definition is the requirement that the risk of physical force must arise "in the course of committing *the offense.*" (emphasis added). This phrase, taken as a whole, plainly refers only to the actions or conditions necessary to satisfy each element of "the offense." Here, the offense is the possession of a weapon by a felon. A felon is "in the course of committing the offense" only when he obtains the weapon. No element other than the possession of a weapon by a felon is needed for conviction. What a felon does or does not do with the

weapon neither adds to, nor subtracts from, that offense. As explained in *United States v. Singleton*, 182 F.3d 7 (D.C.Cir. 1999), "some aspect of the charged offense must create the risk of violence in order to itself qualify as a crime of violence." *Id.* at 14. The act necessary to commit the felon-in-possession offense—obtaining or possessing a weapon while a felon—does not itself involve "a substantial risk" of physical force.

The majority parses the statutory language into several elements to avoid giving the definition its natural meaning and to create an ambiguity where none exists. It does so to justify its policy discussion and its perusal of uncertain legislative history. The majority argues that a felon in possession of a weapon poses a substantial risk of physical force and that, *ipso facto*, that risk occurs "in the course of" committing the offense. This strikes me as pure sophistry. If the statute only defined a "crime of violence" as one "that, by its nature, involves a substantial risk of physical force," the majority's reading would be plausible. However, the statute includes the limiting language "in the course of committing the offense."

The majority attempts to avoid the limiting language by interpreting "in the course of committing the offense" as "during" the possession. The majority then posits a "substantial risk" that a felon in possession will, at some future point "during" his or her continued possession, engage in physical force against person or property. Although this interpretation may have some superficial appeal—after all, the use of a weapon must occur during its possession— it ignores the import of the limitation. "[I]n the course of" must be read in conjunction with "committing the offense" such that the continuing conduct of possessing a weapon cannot be the time frame used to consider whether a "substantial

risk" of physical force derives from the commission of the felon-in-possession offense. Whether the weapon is used in the future is irrelevant. Our concern is the felon-in-possession offense and that offense is committed the instant of possession. A felon who subsequently uses the weapon against another person is "in the course of committing" another offense, not "in the course of committing the [felon-in-possession] offense." The appropriate time frame encompasses only the conduct necessary to commit the felon-in-possession offense. When considering the felon-in-possession offense and the "in the course of committing" requirement, the course is a very short course.[1] Because the statute requires us to look to the charged offense to determine whether the risk of physical force derives from the commission of that offense, it is inappropriate to speculate as to whether a felon-in-possession defendant may commit a "crime of violence" in the future.

Otherwise, I admit that holding the felon-in-possession offense not to fit within the statutory definition of a "crime of violence" for purposes of the Bail Reform Act may result in the release of some potentially dangerous individuals. There are valid policy arguments for affirming and, were I still a Member of Congress, I could act on them. As a court, however, our role is limited to interpretation of the language Congress used in drafting the statute. We should not misread the statutory language in order to carry out what Congress may have intended but failed to accomplish by the language it chose. The majority states that "had Congress explicitly focused on the issue it would have by far preferred [the majority construction]." That may be so, but it does not justify misinterpreting the language used. Because the language of the statute is clear, much of the majority's discussion and much of its criticism of *Singleton* is misplaced. Even if some of

---

1. A felon in possession of a weapon may be in violation of 18 U.S.C. § 922(g)(1) for the duration of the possession, thus alleviating the majority's statute of limitations concerns in

footnote 5. However, the felon in possession is only briefly "in the course of committing" that offense.

*Singleton*'s supporting arguments are flawed, *Singleton* reached the correct result.

In short, the majority attempts to carry out what it believes Congress intended to do. Certainly, we should try to carry out Congress' intent. However, we should do so limiting ourselves to the plain language used. We should not forget that a person arrested for violating the felon-in-possession statute is, at this stage of the criminal proceeding, presumed to be innocent. We should not lightly deprive a presumably innocent person of bail. Nor should we subject such an individual to the risk of detention at a stage when few facts are known other than that the individual previously has been convicted of a felony and is now charged with, but not convicted of, possession of a weapon. The language of the statute is clear to me and I would vacate and remand with instructions to set bail.